Good morning, your honors. May it please the court. Rachel Chung on behalf of appellant Antonio Davis. The district court in this case failed to consider two of the arguments that Mr. Davis raised in his compassionate release motion based on a sentence disparity and his rehabilitation record. The district court's opinion does not address that Mr. Davis even raised these arguments, let alone provide a reasoned explanation for why in its view they do not warrant compassionate release. The Supreme Court and this court's precedents require district courts to consider all non-frivolous arguments that the parties raise on compassionate release and to provide a reasoned analysis. And the district court's failure to do so here requires vacater and remand. And indeed this court has vacated and remanded compassionate release denials for failure to consider the same sentence disparity and rehabilitation type that Mr. Davis raises here. The district court concluded that the sentencing factors under 18 U.S.C. 3553A counsel against relief here, but that calculus can and should be different considering the arguments that Mr. Davis raises. First, that he would likely receive a significantly lower sentence if he were sentenced today and in view of his excellent post-sentencing rehabilitation evidence in the record. Yes, that is our leading argument. The district court had a case law on point that says that he was required to do so. There is. So starting with Concepcion versus United States, the Supreme Court held that district courts must consider non-frivolous arguments raised in sentence modification. My question is, I'm curious to me, sometimes I hear cases, but you say there are two arguments. He didn't say that the record shows that. His case is on point. It says that he must consider it. What else do you mean to say? I'm just curious. Well, we would submit actually, your honor, that the case ends there. It's either true or not. If that's the case, what you just said is a dead ringer. Two arguments were not considered. The law requires that you consider the two arguments and the case is on point. Is that true? It is. Can you talk about our precedent that says we assume that all the arguments that are made have been considered even if unless there's something in the record that suggests otherwise? Sure, your honor. As you know, there is a presumption that the district court did consider all of the party's That presumption can be rebutted by evidence in the record. So here we have obvious evidence in the record that Mr. Davis made these two arguments and it's clear on the face of the district court's opinion. Well, the district court's opinion does not mention those arguments at all and so it's not clear. Well, he doesn't respond to the specific, you know, I looked at this certificate from the paralegal class, but the district court does say that Mr. Davis continued to present a risk of recidivism and a danger to the community which suggests he didn't think that he had rehabilitated and the court also said he thought that a 210 month sentence continued to be necessary to achieve the goals of 3553A which would suggest that regardless of any disparity with current sentencing, he still thought that was necessary for the your honor that the court did say that but in the 3553A analysis that the district court presented, it made absolutely no mention or acknowledgement of the fact that Mr. Davis submitted post-sentencing rehabilitation argument or the sentence. Did the judge in Chavez Mesa make any mention of the post incarceration rehabilitation evidence? Yes, in Chavez Mesa the Supreme Court actually affirmed the denial but Chavez Mesa is instructive because even in the court affirmed and the district court said almost, it said a lot less than was said here, right? Definitely didn't mention the rehabilitation evidence. That's true, your honor, but here it's the district court has, well, first of all, the Concepcion postdates Chavez Mesa and that makes clear that the district court must address all non-frivolous arguments. Do you think the Supreme Court overruled Chavez Mesa? No, it did not, but it clarified and heightened the standard. So Concepcion says that the district court must consider all non-frivolous arguments and if you look to Concepcion and some of What does Concepcion say about what the district court must say? So Concepcion says, Concepcion paired with some of this court's precedents says the district court has to give a reasoned basis sufficient for an appellate court to engage in meaningful appellate review. Here, because the district court didn't mention those arguments at all, there's no way that this court could look at the district court's opinion and say, no, the district court did not abuse its discretion or yes, the district court did abuse its discretion in looking at these two arguments that Mr. Davis presented. So it's really, as Judge Wynn was saying, it's really a question of whether we read the district court's discussion of rehabilitation and continued dangerousness and the necessity of a 210-month sentence, whether we think that addressed those issues or whether that rebuts the presumption, I guess, that the court not only didn't talk about them but actually didn't even think about them. Yes, there's also affirmative suggestions from the district court's opinion that it did not cases. It seems like we started out with cases, pretty straightforward on it, and then we began to nuance it a bit. We covered cases like Martin and McDonnell and others in it. But at the end of the day, it really comes down to, do we want to read into this that that was enough or are we going to say it has to do it and if it don't do it, it's not in there. And that's been a line that's been cut and we probably can go back and forth in terms of well, he meant this and he could have meant this and we've done that in cases. The question is absolutely correct, we've done that. But when we get to a case in which particularly McDonnell says, you say nothing, and that's kind of where your point is, is to say nothing, how much inference, how much reading into it do we do? And we have cases which say none, and it kind of looks like it depends on how we go with it. You could read something they have to say. The end result is it goes back if we decide to send it back. That's not the end of this. I suppose you could then, the court could then just say, I consider those two, go right through it and either give the same decision, the sentence, like I said, or if I could give more, I don't know, on it. So this is one of those recurring issues I kind of wish would go away and you just would go and just do what we said do. You know, give a black and white thing on it rather because we kind of give it mixed signals. Is this enough? Is this enough? And it's not hard to just listen to the arguments and give an answer to it or deal with it. But, you know, I was thinking that maybe these cases would have ended one day, but they keep showing back up. I don't know how to end them, but we've got to figure out a way to make it more of a right-minded rule. We would like that to your honor, and we certainly agree that this is a clear-cut case. As you say, the district court gave absolutely nothing here. And as I was saying earlier, there's actually affirmative indications in the district court's opinion that it did not consider these arguments. So, for example, most of the district court's opinion is about Mr. Davis's COVID-related argument. It did actually mention that Mr. Davis did raise an argument related to his career offender status. And the district court said the proper vehicle for that is a 2255 motion. But the argument that the district court described from its citations is based on Johnson versus United States related to the residual clause. That's a separate argument that Mr. Davis raised in his motion. It's not an issue on this appeal. And the district court did not mention Norman at all. So, you know, it certainly suggests from context and is enough to rebut the presumption that if the district court did look at a sentence disparity at all, the fact that it mentioned Johnson and it didn't mention Norman very strongly suggests that it didn't consider the Norman argument. A second indication is that the district court did not mention in its opinion the fact that Mr. Davis filed an amended compassionate release motion. It didn't cite to the ECF number for that amended motion. And that amended compassionate release motion, as the government recognizes in its brief, is actually where Mr. Davis raised the Norman argument. So, those two things together, coupled with the fact that, again, the district court has given no indication. Just to clarify, that was a motion requesting permission to file an amended motion. Isn't that right? I never saw a ruling on whether the court granted or denied that. Correct, Your Honor. But the government did respond to it in its briefing and it's been substantially in its district court briefing. And it's been substantially part of this case ever since. So, again, we would say that those are we agree that this is a black and white, very easy case. The district court gave nothing. It has to go back. Sorry, you just keep saying the district court gave nothing. But, I mean, in Chavez Mesa, the court called it a bare bones form order, you know, like check in the boxes. That might be almost nothing, right? Sure. And the court there affirmed and said that's sufficient to address all the arguments without having mentioned one of them by name. Here, the court said a lot more than that. It was not a bare bones form order. So what's the distinction? Is it that we have to read in these sorts of the suggestion you're making that we can tell from what the court said that the court, in fact, you know, was thinking about this the wrong way? Or how do you distinguish? I mean, I thought there was a bright line and it's Chavez Mesa, but what's the difference? Well, two things, Your Honor. First, as Judge Wynn pointed out, there's precedent from this court that sets the standard above and beyond Chavez Mesa. If you don't mention it, it has to go back. But Chavez Mesa also said... We've never said if you don't mention it, it has to go back. We've said a court doesn't have to tick through every single argument a defendant makes and address each one one by one and each nuance, right? We have said if you give a mountain of post-rehabilitation evidence and the court doesn't even mention it, right, that we're going to send that back. But we've drawn these, you know, nuanced distinctions that Judge Wynn is talking about. That's correct. But what Chavez Mesa and this court's precedents interpreting Chavez Mesa also say is that the amount of analysis or explanation that the district court has to give is sort of commensurate to the extent of the arguments or the importance of the arguments that that the parties raise. And here, it's certainly potentially... We think it's extraordinary and compelling. It's certainly potentially extraordinary and compelling that looking to the sentence disparity argument, if Mr. Davis were sentenced under the sentencing regime today, not as a career offender following Norman, the sentence he would likely receive under the guidelines range is half as long or even less than the sentence he actually received. And he's already served even longer than that. So the maximum guidelines range he would receive today is about nine and a half years. So that's your best argument, right? Because the rehabilitation evidence, was it... It was the paralegal course and maybe one other thing. There wasn't... And this is not to downplay what he's done, but just comparing to our precedent, it wasn't the sort of mountain that we've talked about in other cases. Our leading argument absolutely is Mr. Davis' sentence disparity argument, but the rehabilitation evidence, which is the paralegal course, numerous other courses, drug rehabilitation related courses. And of course, this was a drug related offense and his extensive record of leadership in his Unicor job. There are some things in the record from his manager regarding his leadership, his ability to take responsibilities, his earned promotion, things like that. And so coupled with the Norman argument that his sentence could be about half or even less reduced to time served, that's certainly something that the district court needs to consider. The fact that someone could potentially be released. Looking for the district court's 3553A argument, I'd also like to highlight two ways as examples in which that analysis should and could have been different had the district court considered these arguments. So looking at the sentencing factors, the district court emphasized two factors in particular, the need for the sentence to reflect the seriousness of the offense and the need to protect the public from the defendant's potential future crimes. So looking at Mr. Davis' two arguments, starting with change of law, the district court noted that in its view, serving nine years, which is how much he had served at the time out of the 17 and a half year sentence was not enough to reflect the seriousness of the offense. But that calculus could and should be different if the sentence length were shorter as much as half as long, which would be the case today. And in that case, Mr. Davis would have served a significantly higher portion of the sentence or again, even potentially the full term of the sentence. Looking at his rehabilitation evidence, the Supreme Court has said that rehabilitation evidence can, quote, critically inform what constitutes a sentence that is sufficient but not greater than necessary to reflect the seriousness of the crime and to protect the public from potential future crimes. And here, as we've mentioned, Mr. Davis did submit extensive rehabilitation evidence, including that he's very willing to accept responsibility, he's interested in personal growth, he's earned promotions in his job and taken on leadership roles. You know, all of that could and should very well play into how long of a sentence is needed to protect the public from any potential future crimes. I'd like to turn now to Section 1B113 of the Sentencing Guidelines, which has been revised. It's not briefed in this case, the government raised it in a 28-J letter. And I just wanted to address that the revisions to Section 1B113 that took effect last month do not bar relief in this case. So what the new 1B113 permits expressly is that if a defendant received an unusually long sentence and has served at least 10 years of that sentence, a change in the law other than an actual amendment to the Guidelines Manual itself can be considered in determining whether an extraordinary and compelling reason for compassionate release exists. And Mr. Davis has met all these criteria, he's served at least 10 years, his sentence was unusually long, that's if you measure it against other people who were sentenced for drug-related conspiracies as career offenders in the year he was sentenced, and it's actually well above the average for all career offenders sentenced that year. He served at least 10 years, and as we've discussed, the disparity between the sentence he received and the sentence he could potentially receive today and would likely receive today under his new Guidelines Range is gross, it's half or even less. And so any revisions to 1B113 don't bar relief here. Those are questions also that the district court should be able to consider in the first instance, in addition to the arguments that Mr. Davis raised, his disparity argument and his rehabilitation argument. I see my time is up, so if the court has no further questions, I'll save the rest of my time. Thank you, Ms. Chown. Thank you. Mr. Ronald Nicholson. Good morning, Your Honors. May it please the court, Aidan Ronald Nicholson for the United States. I'd like to start with the sentencing explanation argument, since that's where my friend began hers. I think the court is right, there is some tension in the case law between how much is enough for sentencing explanation in cases like Martin, where nothing was said with a mountain of evidence. The court has demanded more of an explanation for discounting. Such a massive amount of something relevant to a particular 3553A factor. But I think that the practical effect of the defendant's argument in this case, looking at the record that was presented to the district court here, would be to turn the presumption this court has articulated in cases like High and Jenkins into something of a sum evidence rule. The district court has to give some affirmative evidence of considering these particular factors. And that goes contrary to what this court has said in those cases about not requiring the district court to tick through very specific arguments. I think it's also relevant to remember that we are in the sentencing. The problem is that you're right. There is some tension. It really comes down to Chauvet's language that it depends on the particular circumstances of the case. What in the heck is that? That means every panel can figure out what the circumstances of the case is and go one way or the other. That's exactly what's happening. I think that's right, Your Honor. I think adequacy is a fairly... It makes it difficult because, you know, in the litigation realm where you are, trial judges are, we give that kind of fuzzy stuff. Either you ought to do it or just don't do it. It's pretty easy. Just say, do it. Just say what he said and then go right and address each one. All game's over. But then you throw in the circumstances of each case. You then get the nuance and the, well, he meant this. Doesn't that cover this? You can go on and on and on. I think in litigation, the brighter those rules are, we can move beyond. I absolutely believe, probably not true, at the end of the day, I'm not sure this client is going to come out one way or the other on this case. I'm much better than where he is because the cure is nothing. I mean, just go back and just kind of do it and consider it. And it's pretty solid. And I hope, I'm not sure this panel can go back and pull it all together, but some way this needs to end. This nuancing of going back and forth on what he said, just say it. Just do what needs to be done. That's not the issue of the case. You wouldn't agree with that, would you? It would make your life a lot easier, wouldn't it? Your Honor, the fewer sentencing explanation cases I would have to argue from this podium, the more I would like it. Even when you're dealing with a case like this, you kind of take it as a burden on yourself. You get a case like this and you look at it and you say, Your Honor, he kind of did bring up these arguments. You don't have to. But think about it if you did. You said he didn't bring up this argument. I want to make sure you fully considered that argument. How do you think that would come out? He probably said, Yes, I was going to consider it, and this, da, da, da. And you probably wouldn't be able to. There's got to be an easier fix than just, you know, something like this where he creates this kind of fuzziness. I don't disagree that there are probably more efficient ways to run a railroad. I do think that the problem we have is that the dictate of not requiring a clear statement rule comes from the Supreme Court in cases like Gall and Chavez-Mesa. They have essentially precluded courts from applying that kind of clear statement rule. Yeah, but we took it and ran with it. We said you need a robust type situation, you know, the detailed explanation, something there. So we nuanced that. When you give an appellate court that kind of fuzziness, you're going to get different nuances depending on, unfortunately, the panels of different ideas. I could be a different one. My challenge, of course, is not to be on one where I'm seeing one here and seeing it on the other because all of us have that. But at the end of the day, this cannot be a problem. It cannot be fixed with something. And, you know, bright-line rules are not always good because you really want to get individualized sentences. That's the key. But this is a procedural thing. This is did you consider these two arguments. That's, it seems like to me, particularly onerous. I'm not sure the defendant needs it. He probably wants there to be an error in the record. But it seems particularly onerous for the judge but also the prosecutor. Make sure to consider those arguments. And we might not have to go to full circuit and argue this thing up here. Your Honor, it has identified. I don't know what panel we'll get on and how it's going to come out. I'm speaking frankly. I'm just telling you. You know what I'm saying is true. Your Honor, the same discussions have been had in the office, yes. I'm sure. There are sentencing explanation cases where at the end of the day we feel like we're standing here and we're just asking the court, read the record, and you'll have to decide whether this is enough because we have cases on both sides of the line. This case is easier than that, though. I don't agree with you. Doesn't this case have to go back? The district court judge clearly didn't consider change in law at all. Do you agree with that? No, Your Honor. He said he couldn't. He said he couldn't. You need to bring it someplace else. You're in the wrong place, the wrong procedure. Am I misinformed? Am I misinformed about that? I think a little bit, Your Honor. Okay, give me the little bit I was misinformed about. Sure. So the district court specifically talked about the 2255 being the vehicle for the unconstitutionality of the Johnson claim. But that argument equally applies to the Norman claim. So just because the district court – there's sort of two ways to think about this. One, you could think of it as the district court's explanation about 2255 encompassing a larger scope than just unconstitutionality under Johnson. But the second is in sort of a harmlessness analysis of if he didn't think 2255 or he didn't think compassionate release was available for the unconstitutionality of a conviction under Johnson, he's not going to think that it's available for post-sentencing judicial changes of law like in Norman. So going back, he'll just give the same answer. This is a 2255 claim because we think it is here. I'm not going to be a mind reader projecting what – I think that justice occurs when it's properly before the court with the right instruction about the law and that things might be different. I don't know. Otherwise, that's why I sit on the bench here and I think all of us do to try to get it right in appellate courts all the time. We don't know what it might be. We remand a whole lot of cases. I don't remand them thinking that nothing is going to happen in terms of without further discussion. I trust district courts to listen to our opinions and read them and take our remand seriously. The question here is that last month, as you know, there was a split C change in terms of sentencing commission. It talks about looking at change in law and those kind of things. Wouldn't we have to send that back for – at least in the first instance for the district court to consider what he obviously didn't know then that we now know now? Don't we have to do that? I don't think you have to, Your Honor. I think it is a path available to the court for sure. One, the government's position first is that you could affirm just on the 3553A factors and not have to deal because there are cases like High and Jenkins where even where courts have assumed that the existence of an extraordinary and compelling circumstance exists, the 3553A factors cut the other way. But if the court has some trepidation about that or doesn't feel that 3553A analysis is robust enough to meet the High and Jenkins standard, it can remand for consideration. Well, it's not robust because it pretty much is stale. It's looking through the lens of what happened over a decade ago. I want you to address this. I think this is one of the biggest problems I have. I like simplicity. It's called compassionate relief. Compassion is something that you get not because you deserve it, but it's because it's something extraordinary that you've given it. Because you go back and say, well, most district court judges believe that when they sentenced the person back then, they thought it was right. It's not a matter. It almost looks like a lot of them go back. Let me see. What I did ten years ago, yep, I still think I was right. I still think I was right. No, it's what's happened since then. Rehabilitation, things like that, those things are important. And we do talk. You don't have to tick things off, but we shouldn't have to go and find out and fill in the blanks for the district court judge when it's not there. I mean, in terms of how do you not send it back when we know the Sentencing Commission, and I'll let you finish, but that's one point. And the other point is this. The reason why we're still here dealing with these cases is because our country, our judicial system, is trying to address the mistakes made in sentencing disparity that happened a long time ago. In terms of what led a lot to mass incarceration and those things, and that's what the Sentencing Commission did in 2010, in 2018, and Amendment 782 and going along, and now since November of last month. That is an ongoing process of justice. And that's why we look at these things in a compassionate release thing. That's why we're still here, and I'm glad we are because it is a dynamic. Justice is not a static. It's a dynamic. So don't we have to heal? You can look at those things. Concepcion puts us in a different light here. And, again, I'm not criticizing the district court judge because he or she, the judge, is always in that continuum too, but as an appellate court, we have to look at it in terms of what is there. And thank the government for bringing it up, and I appreciate you bringing up the 28J, and that's what you should do, and that's good. But I don't see how justice will allow us not to remand this case. So, Your Honor, I think it's important to remember that we are in a different posture than 2255, where there is the one and done rule. Right. You know, there is no bar on second and successive compassionate release motions. So, you know, aside from I think a weird gnarle of jurisdiction, if one compassionate release motion is on appeal, can the defendant file another one? Nothing bars the defendant from seeking compassionate release, again, under the new policy statement. And then the government can present its full arguments about whether those terms apply. He can present his arguments, and we can have sort of a second go using the new legal standards. I will point out there have been instances in the past where this court has remanded just because the legal regime has changed so dramatically. It didn't exactly say mootness, but it's sort of in the mootness universe of cases, including where the Supreme Court made changes to how this court was interpreting 3582C2. So it's not unprecedented to remand just because the landscape is so different. I would admit there's some judicial efficiency to that, I think, rather than deciding this case and then having him file a new petition and we just do a whole proceeding like that. So I'm not saying that's beyond the power of the court to do. I also think the government's position of you can just affirm here and the day this court affirms, defendant can file a new motion for compassionate release invoking the new standard is equally true. And I think the difference is to remand, this court should likely identify an error that the district court committed. And I don't think the district court committed an error under the regime that existed at the time. And I don't think the case is technically moot under the strictest standards of the term. So as a matter of doctrinal clarity, I think the best course of action would be to affirm and the defendant files a new motion for compassionate release. But I do concede this court has in previous cases just said the legal landscape is so different now that we can remand for the district court to consider in the first instance. And I do agree with my friend that if this court feels like his claim should be re-evaluated under the new policy statement, remand to the district court to do that in the first instance is the appropriate course of action. Well, I appreciate the government saying that. Go ahead. But just to clarify, that all has to do with extraordinary and compelling circumstances. Correct. So in that instance, we would go back to the district court and we would still have to litigate the existence of extraordinary and compelling circumstances under the new policy statement and the legal regime that applies now that there is an applicable policy statement. As it stands here, the government's position is still, under the regime that the district court was applying at the time, there were no extraordinary and compelling circumstances. We think the explanation was adequate and we think the 3553A analysis was adequate. And so the court should affirm on that case. We can bypass that, right? We can assume the district court erred five, six different ways when it comes to extraordinary and compelling circumstances. But then our precedent is focused on the 3553A analysis. Correct, Your Honor. And to boil down to what the district court considered here, I think the points that the district court made encompasses both of the arguments that the defendant says were omitted from the extraordinary and compelling components of it. The district court in this instance was the same sentencing judge. He explicitly incorporated his previous reasons from sentencing and said, almost like Judge Gregory just said, looked at it again and said, I think this sentence continues to be the appropriate sentence imposed for this defendant. Cited his previous criminal history, which again goes to the rehabilitation point. And so on this instance, I think if the court were just remanding for a 3553A analysis, I don't think it would come out any differently because the district court already put into the record exactly why he felt this particular sentence suits this particular defendant, even at a second look stage. That's not really the question, is that if we think it would come out differently. The question is, do we think there was an error? Because when we send these 3553A analyses back to district courts, we're giving them instruction on how to do it the next time, right? And we're helping them understand our precedent of what's expected in these discussions. And if we send it back without an error, that's perhaps not helpful guidance. I agree with that, Your Honor. I think a remand in this case would almost more muddy the waters of whatever tension already exists in the case law. As you pointed out, Chavez Mesa has a significantly lower amount of explanation than was provided in this case. The defendant here did provide specific reasons under the 3553A factors for why he chose to maintain the same sentence. And I think remanding it at this point just for more discussion under 3553A would be the equivalent of saying, just say more words about the reasons you already gave. This case didn't have to be remanded with saying it's not having an error. It doesn't have to be accusatory at all. The compassionate release statute in Congress put it together. It said that we'll look at 3553A factors that exist, but also said those that are promulgated by the sentencing commission. The problem is the sentencing commission didn't have a quorum for years, and finally now we have an operating commission and they have done exactly that. That's not any dig on the district court. That's the reality of, again, the dynamics of what we're dealing with. We're trying to correct a problem that existed. He would no longer be an armed career offender. That's seismic. So at least you say, well, you know, this person would only get ten years less and say, well, at least say it on the record if that's what you really believe. It doesn't matter that this person got ten years more than they should have gotten. I still think they ought to stay where they are and the sentence ought to be like it is. If you believe that, then perhaps maybe that might be the case. But right now, as this stands, it seems like you don't have to accuse it, you don't have to find an error at all. Now we have arrived. We have a commission that's giving some guidelines. Now use it. That's all it says. It's not rocket science. Your Honor, I understand the concern, and I think I tend to be a little bit more formalist about this. I think because there is no second or successive bar, there is no practical bar that would prevent the defendant from bringing his new compassionate release motion under the policy statement. And because there's no error here, because there's an adequate explanation, because under this court's precedent that decision was proper, I think the sort of most doctrinally consistent answer is affirmance followed by a new motion for compassionate release. But again, I think it's important to remember that an affirmance here doesn't bar the defendant from raising his claims under the new policy statement. Unless the court has more questions, we'll rest on our papers. Thank you. Thank you. Thank you, Mr. Grano-Nicholson. Ms. Chung, you have a minute left. A few points on rebuttal, Your Honors. The fact that there's no statutory or procedural bar to Mr. Davis filing a second compassionate release motion is not good reason for this court to affirm a district court's opinion that did not provide the bare minimum amount of analysis and explanation for why it rejected Mr. Davis's arguments in the first place. That does nothing to solve the problem of holding district courts to the standards that this court's law and the Supreme Court's law requires them to do. If every time that happened, he said, you know, you can – in a context where there's, you know, the potential for a successive motion, the court said, that's okay, he can just file again. You know, that's a huge judicial inefficiency, and it still leaves the defendant trapped under errors that may have been committed the first time. Second, we disagree with the government that the district court did not commit any error under the rules at the time. There was error at the time. It's, again, the failure to consider the sentencing disparity argument and the rehabilitation argument. It's true that Concepcion had not yet been published, and this court's cases interpreting it had not yet been published at the time the district court's opinion was issued. But High and Chavez-Mesa had been published. You know, I don't want to beat a dead horse. We've discussed that those cases are on more of a sliding scale, but this – the fact that Mr. Davis could potentially have his sentence reduced by half, and even at the time of the district court's opinion, it would have been within months of potentially time served, that's certainly significant, and that's, you know, as we've discussed, something that the district court needs to consider and provide, you know, at minimum, an acknowledgement that it considered those arguments. There's nothing in its 3553A analysis acknowledging that. In fact, the opposite is true. The district court starts the 3553 analysis by saying that it's incorporating by reference all of the factors from Mr. Davis' sentencing. Now, Concepcion – And how many years ago was that? The sentencing? Yeah. It was in 2013. It was 10 years ago. So it was a very long time ago. Right. He was incorporating all of those things that he said. Yes, he was incorporating – and, you know, all of that still holds. Compassionate release is not a plenary resentencing, but there are, you know, 10 years of rehabilitation evidence in the record, and there's the sentencing disparity argument in the record. None of that was taken into consideration. The district court did not even say, you know, I've considered them and I've rejected them. We don't think that would be enough in this case, but, you know, it might be – it would be something. It might be enough in some cases where the arguments are not as, you know, changed the defendant's sentence as much, but here he was, you know, potentially eligible to have his sentence reduced basically to time served. That absolutely requires an explanation. Third, you know, we've discussed Concepcion and Chavez-Mesa. Concepcion did heighten the bar from Chavez-Mesa, and this court has remanded denials of compassionate release based on Concepcion, even where the district court's opinion was issued before Concepcion. That relates to my first rebuttal point that the fact that the defendant could simply file a second or successive compassionate release motion is not good reason to let the insufficient decision stand. Unless this court has any further questions, I'll submit on the arguments we've discussed. All right. Thank you, Ms. Chung. I know, Ms. Chung, that you were caught upon it. On behalf of the Fourth Circuit, I want to thank you for taking the appointment. We depend on lawyers like yourself to take these cases, and it's very important to the court that we appreciate you. Thank you. It's an honor to be here. And, Mr. Grano-Nicholson, we also acknowledge your able representation of the United States.
judges: Roger L. Gregory, James Andrew Wynn, Allison J. Rushing